IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PEGGY S. WIERZBA,

                              Plaintiff,                              OPINION & ORDER

            v.                                                                  12-cv-60-wmc

CAROLYN W. COLVIN, Commissioner
of Social Security,

                              Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Peggy S. Wierzba seeks judicial review of an adverse decision of the Commissioner of Social Security, denying her eligibility for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1614(a)(3)(A). Specifically, Wierzba contends that the Administrative Law Judge Milan M. Dostal ("ALJ") (1) failed to evaluate her obesity consistent with Social Security Ruling ("SSR") 02-1p; (2) erroneously rejected her physician assistant's opinion in violation of SSR 06-3p; (3) rendered a residual functional capacity ("RFC") determination that was both unexplained and unsupported by substantial evidence; and (4) erroneously found Wierzba's allegations not credible. While the ALJ did not specifically mention SSR 02-1p, the court finds that he sufficiently analyzed its requirements. In addition, the court finds that the ALJ properly considered the physician assistant's opinion, rendered an RFC determination supported by substantial evidence, and made a proper credibility finding. Accordingly, the final

decision of the Commissioner, adopting the ALJ's finding that Wierzba was not entitled to DIB and SSI, will be affirmed.

## FACTS[1]

### I.  Social Security Application

On January 28, 2008, Wierzba filed a Title II application for a period of DIB and a Title XVI application for SSI, alleging disability beginning January 1, 2008.  (AR 118-126.)  On both applications, Wierzba listed back, neck, right knee injuries, stenosis and arthritis as illnesses, injuries, or conditions that limited her ability to work.  (AR 135.)  Both applications were denied initially on March 13, 2008 (AR 97-100), and again upon reconsideration on September 30, 2008 (AR 101-108).  A hearing to reconsider the denial of DIB and SSI was held on July 20, 2010, before ALJ Milan M. Dostal.  Wierzba was represented by counsel and also testified.  (AR 57, 62-84.)  In addition, the ALJ heard and considered the testimony of Allen Boroskin, a neutral vocational expert.  (AR 85-90.)

On August 18, 2010, the ALJ issued a written decision denying Wierzba's application for DIB and SSI.  The ALJ found that although she has severe impairments, including morbid obesity, she was not disabled within the meaning of the Social Security Act from January 1, 2008, through August 18, 2010.  (AR 12-21.)  This decision became the final decision of the Commissioner of Social Security on October 28, 2011, when the Appeals Council declined Wierzba's request for review of the ALJ's decision.  (AR 4-8.)

---

[1] The following facts are drawn from the administrative record ("AR"), available at dkt. #10.

2

## II. Overview of Medical Issues

Wierzba has been treated for multiple ailments, including symptoms related to obesity, status post cervical spine fusion surgery, right shoulder injuries, right knee arthritis, asthma, sleep apnea and anemia.

### A. Treatments and symptoms related to obesity

Wierzba had a gastric bypass surgery in 1986. (AR 216.) On July 13, 2007, she sought medical treatment for her recent weight gain (20 pounds in 6 weeks) with associated fatigue and anemia. (AR 217.) She was diagnosed as obese on August 3, 2007. (AR 211.) She started to take nutrition education at Rice Medical Center regarding her obesity on October 1, 2009. (AR 431-37.) Initially, the physician attributed Wierzba's regained weight to decrease in activity, increase in portions, and lack of education. (AR 436-37.) Later, the endoscopy examination reveals that she has an extremely large gastric pouch and that her prior gastric surgery failed to "maintain satiety" or "have any type of stricture component." (AR 484-85.) As a result, the physician recommended another gastric surgery to be part of a weight loss regimen. (AR 485.) However, there is no indication in the record that Wierzba scheduled the recommended gastric surgery.

### B. Treatments and symptoms related to the cervical spine fusion

Wierzba underwent a cervical spine fusion surgery at C5 through C7 levels with an anterior plate in May of 2005. (AR 205.) After the procedure, she continued to suffer from neck, shoulder, and lower back pains and sought treatment at Ford

3

Chiropractic Clinic from October 27, 2007, to February 25, 2008.  (AR 259-263.)  The chiropractic physician assistant, Philip Mahoney, at that clinic noted that Wierzba has both radicular and muscular pains.  (AR 210.)

On November 26, 2007, Wierzba sought medical treatments for neck pain with radiation pain and paresthesia into the left arm at Rice Medical Center.  (AR 209-10.) The MRI and X-ray images revealed that there were post-operative changes related to anterior spinal fixation at C5-C7 levels, mild annular bulging of the C4-C5 disc, a small left paracentral/foraminal disc protrusion at the T1-T2 levels, and disc degenerative changes with narrowing of the disc space at the C4-C5 levels.  (AR 228-231.) Upon examining the MRI images, Mahoney believed that Wierzba's reversal of the normal cervical curve could be straining the C4-C5 levels and recommended an epidural injection.  (AR 208.)  Following that recommendation, Wierzba received three epidural steroid injections.  (AR 224.)  On December 28, 2007, Mahoney noted that Wierzba's persistent neck and left arm pains were possibly due to foraminal stenosis at the C4-C5 levels on the left.  (AR 207.)

### C. Treatments and symptoms related to right shoulder tendonitis

On February 23, 2008, Wierzba fell and injured her right shoulder.  (AR 315.) On June 23, 2008, an MRI revealed that there were significant, proliferative changes of the AC joint.  (AR 283-85.)   The physician found right shoulder rotator cuff impingement syndrome and AC joint degenerative disease, which might require surgical intervention.  (AR 333-37.)  Wierzba agreed to undergo right shoulder distal clavicle excision, right shoulder subacromial decompression, and right shoulder arthroscopy

procedures on August 21, 2008.  (AR 339-40.)  After surgery, however, she continued to suffer from right shoulder impingement and AC joint degenerative disease until October 10, 2008, where she reported that the pain was improving.  (AR 339.)

### D. Symptoms related to right knee arthritis

Wierzba injured her right knee 6 or 7 years ago and had arthroscopic surgery done at that time.  (AR 409.)  Without any new injuries, she started to suffer from right knee pains in November of 2008.  (*Id.*)  MRI and X-ray revealed that there was hypertrophic degenerative change of the knee, predominantly affecting the medial joint compartment. (AR 371-72, 390.)  Wierzba then sought medical treatments at Rice Medical Center. (AR 410.)  Per Dr. Todd Williams' recommendation on December 5, 2008, Wierzba received cortisone injection treatments.  (AR 406-08.)  The pain persisted despite these treatments.  On May 22, 2009, Dr. Williams informed Wierzba that her only options were either to undergo a total knee replacement surgery, or to put up with the pain with injections and oral medications as tolerated.  (AR 405.)

### E.  Symptoms related to sleep apnea and asthma

On November 24, 2009, Wierzba was diagnosed with obstructive sleep apnea. (AR 425-27.)  The physician noted that even major weight loss would not eliminate her symptoms, which were attributed to "a small mouth but large tongue."  (AR 427.)  This diagnosis was confirmed by a "Split Night Study" performed on December 3, 2009.  (AR 481-83.)  In addition, her medical records suggest that she has suffered from asthma for more than 12 years.  (AR 445-68.)

### III.  Administrative Law Judge Hearing

At the hearing, Wierzba testified to pain in her neck, back, right knee and left arm, as well as both shoulders.  (AR 64.)  Wierzba confirmed taking pain pills on an as need basis to ease her pain, generally more than once a week.  *Id*.  The medication sometimes eases the pain, but sometimes does not, depending on increased activity and changing weather.  (AR 65.)

Wierzba is 5'4" tall and weighed 212 pounds at the time of the hearing.  (AR 71.) She can both stand and sit for just a half hour, and walk for a lap around the room. (AR 65.)  As to Wierzba's right knee pain, her doctor recommended a total knee replacement surgery, but she decided to put it off as long as possible.  (AR 73.)  The right shoulder pain makes it a little bit difficult for her to lift her hand over head.  (AR 74.)  The fusion surgery on her neck prevents her from lifting more than 10 pounds.  (AR 75.)

As to her mental condition, Wierzba testified that she feels sad and attempted to commit suicide ten years ago.  (AR 66.)  She also gets antsy and nervous, but does not take any medication for that.  (*Id.*)

During the hearing, the ALJ presented three hypotheticals to the vocational expert Allen Beroskin.  The first hypothetical describes an individual who:  (1) can only lift 20 pounds occasionally and 10 pounds on a frequent basis; (2) should avoid climbing ladders, ropes, and scaffolds; (3) should avoid work above shoulder height due to shoulder problems; (4) should avoid working in an environment where there are excessive amount of dust, fumes, and gases due to asthma; (5) is suffering from pains in back, neck, shoulders, arms, and knees; (6) is obese; and (7) suffers from anemia and fatigue.

(AR 86-87.)  The ALJ also asked the VE to assume the individual's pain level is slight of nature, having a slight effect on the ability to do basic work activities and can be controlled by appropriate medication without significant side effects.  (AR 87.)   Mr. Beroskin testified that such an individual could do all of Wierzba's past work except the bartender position.  (AR 87.)

The second and third hypotheticals share the same general parameters but differ in the level of pain described, the effects of pain on the ability of the individual to do basic work activities, and whether the pain can be controlled by appropriate medication with significant side effects.  In hypothetical number 2, the ALJ asked the VE to assume the pain level is of moderate nature, has a moderate effect on her basic work ability, but can be controlled by appropriate medication without significant side effects.   In hypothetical number 3, the pain is described as severe and cannot be controlled by medication, or can only be controlled by medication with significant side effects. Beroskin testified that the individual in the second hypothetical could perform the work of a bar owner, a short order cooker, and a waitress, all as described in the Dictionary of Occupational Titles, but the individual in the third hypothetical could do none of those jobs.  (AR 88-89.)  Beroskin also testified that there is no work in the national economy for people who can sit or stand less than eight hours a day.  (AR 90.)

## IV. Administrative Law Judge's Decision

In denying Wierzba's applications, the ALJ applied the five-step evaluation process, *see* 20 C.F.R. § 404.1520(a)(4).  The ALJ found that Wierzba meets the insured status requirements of the Social Security Act through March 30, 2010.  The ALJ also

found that Wierzba has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. The ALJ then found that Wierzba suffers from the following severe impairments: status post cervical spine fusion; right shoulder tendonitis, status post-surgery; morbid obesity; right knee arthritis; asthma; and sleep apnea. The ALJ also found that Wierzba's anemia is a non-severe impairment because she did not have any symptoms of the disease. As to the mental impairments, the ALJ found that Wierzba's "medically determinable" mental impairment of depression is non-severe. In so finding, the ALJ concluded that Wierzba's depression causes no more than mild limitation and, therefore, the "paragraph B" criteria are not satisfied.

Next, the ALJ found that Wierzba does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In particular, the ALJ found that Wierzba's physical impairments do not meet or medically equal Listing 1.02 (major dysfunction of a joint), 1.04 (disorder of the spine), and 3.03 (asthma).

The ALJ then found that Wierzba has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: lift 20 pounds occasionally and 10 pounds frequently; avoid climbing ladders, ropes, or scaffolds; occasionally climb, balance, stoop, kneel, crouch, and crawl; avoid working above shoulder height; avoid excessive dusts, fumes, and gases; and accommodate pain symptoms of a moderate nature controlled with appropriate medication and without significant side effects, depression or anxiety of a slight nature and slight effect on the ability to sustain concentration and attention.

8

In determining that the above residual functional capacity is consistent with the objective medical evidence on the record, the ALJ considered and decided to give no weight to the opinions issued by Chiropractic Assistant Philip Mahoney on December 4, 2009.   Similarly, the ALJ gave little weight to the residual functional capacity assessments dated September 29, 2008, and March 13, 2008, which were done by a non-examining state agency doctor.

With respect to Mr. Mahoney's opinions, the ALJ found his opinions inconsistent with the objective medical evidence on record, because:   (1) he failed to assess the limitations for the right upper extremity while Wierzba clearly suffered an injury on her right shoulder; and (2) he found limitations in grasping and fine manipulation dispite there being no objective medical evidence of radiating pain or numbness in the left upper extremity.  In addition, the ALJ noted that Mr. Mahoney is not considered an acceptable medical source as he is a physician assistant, not a medical doctor.   The ALJ also discredited both residual functional capacity assessments on the grounds that they either did not considered Wierzba's right shoulder injury or are inconsistent with the medical evidence.

As part of the residual functional capacity determination, the ALJ found not credible Wierzba's statements concerning the intensity, persistence and limiting effects of her symptoms are on the grounds that (1) the statements are inconsistent with her treatment history, which shows that timely treatments were generally successful in diminishing her symptoms, and (2) her statement that her weight gain is likely due to a thyroid problem is inconsistent with objective medical record, which shows that the cause

9

of weight gain is most likely due to the combination of increased eating and decreased activity.

Based on his finding of Wierzba's residual functional capacity and testimony from the vocational expert, the ALJ concluded that Wierzba is capable of performing past relevant work as a bar owner, short order cooker, and waitress, and that Wierzba is therefore not under a disability as defined in the Social Security Act from January 1, 2008, through the date of the decision.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."   42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).  At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision, *Edwards*, 985 F.2d at 336.

10

Wierzba raises four challenges to the ALJ's decision.  First, the ALJ failed to consider her obesity consistent with SSR 02-1p.  Second, the ALJ erroneously rejected Philip Mahoney's opinion and rendered an unexplained residual functional capacity determination.  Third, the ALJ's residual functional capacity determination is not supported by substantial evidence because he relied on a non-examining state agency opinion which did not account for all of Wierzba's impairments and limitations, especially injuries to her right knee.  Fourth, the ALJ failed to credit her statements concerning the intensity, persistence and limiting effects of her symptoms.  The court will address each challenge in turn.

## I.  ALJ's Treatment of Wierzba's Obesity

In determining whether a claimant is under a disability as defined in Social Security Act, the ALJ must conduct a five-step inquiry.  *See* 20 C.F.R. § 404.1520; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).  In the event the claimant suffers from obesity, SSR 02-1p requires the ALJ to incorporate the effects of obesity in the five-step sequential evaluation process.  *See* SSR 02-1p at 3; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  But a failure to consider the effects of obesity explicitly may be a harmless error, so long as the ALJ demonstrated that he reviewed the medical reports of the doctors familiar with the claimant's obesity.  *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Skarbek*, 390 F.3d at 504; *Hernandez v. Astrue*, 277 Fed. Appx. 617, 624 (7th Cir. 2008) (unpublished).

Although it is troubling that the ALJ did not explicitly mention the effects of obesity at each stage of the five-step evaluation, he implicitly considered this factor

reflected by his review of medical records concerning Wierzba's obesity.  The medical records suggest that Wierzba was diagnosed as morbidly obese and underwent a gastric bypass surgery to control her weight.  (AR 211.)  The development and the effects on weight gain of the previous bypass surgery were examined and confirmed by Dr. Sewlyn.  (AR 484.)  In his written decision, the ALJ more than once cited to the medical reports suggesting Wierzba suffers from obesity and the failure of her previous bypass surgery.  During the hearing, the ALJ also included obesity as one of the impairments in the hypothetical for the vocational expert to evaluate the work capacity of the hypothetical individual.  (AR 86.)

In addition, the ALJ did consider the effects of obesity during the course of the five-step evaluation process.  At step 2 of the evaluation, the ALJ explicitly found that morbid obesity to be one of Wierzba's *severe* impairments.   (AR 14.)   Then, in determining whether Wierzba's residual functional capacity is consistent with medical records, the ALJ again considered Wierzba's obesity and the effects of the previous bariatric surgery on her recent weight gain.  (AR 18.)  In determining whether Wierzba is capable of performing past relevant work, the ALJ relied on the vocation expert's testimony, indicating that a hypothetical individual with all of Wierzba's severe impairments, *including morbid obesity*, is capable of performing those jobs.  (AR 20.)

Wierzba also takes the issue with the ALJ mischaracterizing her obesity as simply due to volitional overeating.  Although it is true, and the defendant now concedes, that such an attribution is improper, the ALJ did not ignore the effects of obesity during the evaluation process, as required by SSR 02-1p.  In addition, the ALJ did not reject the

impact of Wierzba's obesity due to the above characterization and her reference to a thyroid problem.  Instead, the ALJ only mentioned Wierzba's overeating and reference to a thyroid problem to discount her credibility.  In the end, the ALJ neither denied that Wierzba is obese, nor did he fail to consider the effects of her obesity based on those other factors.

## II.  ALJ's Treatment of Mahoney's Opinions

Next, Wierzba argues that the ALJ erred in rejecting Mr. Mahoney's residual functional capacity assessment in violation of SSR 06-3p because he is a physician assistant.  The court disagrees.  First, the ALJ did not err in characterizing Mahoney's opinion as not from an "acceptable medical source," since a physician assistant's opinion is categorized as evidence from "other sources" under 20 C.F.R. § 404.1513(d).  Second, and more importantly, the ALJ rejected Mahoney's opinion primarily because it was inconsistent with the objective medical evidence, not simply because he is not a medical doctor.

In considering evidence from "other sources," SSR 06-03p *requires* the ALJ to consider whether it is consistent with other evidence.  *See* SSR 06-03p at 4-5.  In this case, the ALJ followed this guidance and pointed out that Mahoney's opinion is inconsistent with objective evidence, both because (1) Mahoney failed to assess the limitations for the upper right extremity while Wierzba clearly suffers from injuries and pains in her right shoulder; and (2) Mahoney assessed limitations in grasping and fine manipulation while there was no objective evidence of radiating pain or numbness in the

13

left upper extremity in the record.  Far from departing from regulations, the ALJ acted consistent with SSR 06-03p.

## III.  ALJ's Residual Functional Capacity Determination

Wierzba also argues erroneously that the ALJ made a residual functional capacity determination not supported by substantial evidence, relying on a non-examining state agency opinion that failed to account for all of Wierzba's impairments and limitations, especially injuries to her right knee.  In fact, the ALJ actually gave little weight to either assessment conducted by non-examining state agency physicians.  With respect to the assessment dated March 13, 2008, the ALJ discredited it on the very grounds that it did not consider all impairments Wierzba had at the time.  Similarly, the ALJ gave little weight to the assessment dated September 28, 2008, because it concluded that Wierzba was capable of a range of light work with only occasional overhead activity on the right side, while medical records suggest that she should be precluded from all overhead activities.  Finally, in reaching a residual functional capacity determination, the ALJ did *not* ignore the fact that Wierzba suffers from the pain and limitations in her right knee. On the contrary, the ALJ determined that Wierzba is "precluded from climbing ladders, ropes, and scaffolds because of the strain that type of climbing can put on her already damaged knee."  (AR 18.)

Wierzba further argues that the ALJ's finding that her pains were of moderate nature and were well controlled by medication is not supported by substantial evidence, and, therefore, his residual functional capacity determination is not sufficiently explained.  Again, the court disagrees.  According to Wierzba's own testimony, she takes

14

medications on an as-needed basis and that the medication sometimes eases her pains. (AR 64.)  Despite the pains, Wierzba was also still able to play with her granddaughter in the yard, go to the park, socialize with friends, and do some fishing.  (AR 67.)  She was similarly able to perform most of her personal care activities, albeit slowly due to her impairments.  Considering the entire record, a "reasonable mind" could conclude that Wierzba's pain is well controlled.  Accordingly, the ALJ's residual functional capacity determination is supported by substantial evidence.

## IV.  ALJ's Credibility Determination

Finally, Wierzba contends that the ALJ's adverse credibility finding was not supported by substantial evidence.  As the Seventh Circuit instructs, those determinations are entitled to special deference because the ALJ has the opportunity to observe the claimant testifying.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Therefore, courts give an ALJ's credibility determinations a "commonsensical reading," rather than "nitpick the ALJ's opinion for inconsistencies and contradictions."  *Id.*  The court will overturn an ALJ's credibility finding only if "patently wrong."  *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

In this case, the ALJ summarized and discussed the various factors supporting his credibility finding, all of which are supported by the evidence on record.  He explained that Wierzba continues to complain about her pains while the medical records show that she did get some reliefs from the treatments.[2]  In addition, the ALJ discredited Wierzba's

---

[2] As noted previously, Wierzba testified that she takes medication on an as-needed basis and that it sometimes relieves her pain. (AR 64.) During the course of treating her right

credibility because she (1) attributed her fatigue to obesity and anemia, while the medical records show that her anemia is asymptomatic; and (2) claimed thyroid problem as the cause of her obesity, while no record shows that the problem had been diagnosed.

Wierzba further takes issue with the ALJ's characterization that her obesity was her own doing. While viewed in isolation, these comments could be seen as improper, but the ALJ properly considered Wierzba's own statements as to the cause of her obesity in determining her credibility. The court looks at whether the ALJ finding is based on "patently wrong" facts. Here, Wierzba's treating physician in Rice Medical Center, upon treating her obesity problem, had assessed and determined that "decreased activity and increased emotional eating are likely the reasons for Wierzba's weight gain." (AR 422.) While Wierzba's thyroid problem was listed on some physician notes, no formal diagnosis can be found on the record. The ALJ's credibility finding is supported by the record and is therefore not patently wrong. Accordingly, the court will not overturn the ALJ's credibility finding.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Peggy S. Wierzba's appeal

---

shoulder, she also told her treating physician that she thinks "she is making real progress." (AR 389.)

16

is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of September, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge